The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, Counsel. Our next case is 4-22-0816, City of East Peoria, Illinois. Appellant v. Board of Trustees of the Police Pension Fund of the City of East Peoria, Appalese. Counsel, for the appellant, could you please state your name for the record? Robert McCoy. Thank you, sir. And, Counsel, for the appellee, could you please state your name for the record in the order in which you'll be arguing? Good afternoon, Judge Vince Mancini. On behalf of the City of East Peoria Pension Fund. Thank you. Jennifer Bonesteel. Thank you very much. Counsel, for the appellee, you may proceed. I'm sorry, Counsel, for the appellant. Thank you, Your Honor, and good afternoon. Thank you, Counsel. As I said, I'm Robert McCoy, and I'm occurring on behalf of the City of East Peoria. And this case, as you know, involves a proper interpretation of Section 3-111A of the Pension Code. And that's a statutory interpretation question that's revealed de novo. And the City, to be clear, is urging a plain language reading of that. There may have been some confusion in the briefs, but we think we get to where we want to be with plain language reading. But if we do not have a plain language reading of the statute where we have court finds the statute is ambiguous, we have backup arguments that the administrative guidance, case law, and legislative history support the city's reading of statutes as well. And, you know, under Section 3-111A, the salary of a police officer like Mr. LaCoste, who's retiring, for purposes of calculating his retirement benefits is the salary attached to the break held on the last day of service or for one year prior to the last day, whichever is greater. And we think that when you don't look at the last day of service, if that's not the highest salary, and when you're looking at the salary attached to the rank held for one year prior to the last day of service, you look at the actual salary received. But I think the appellees want to rewrite the statute to say that salary is the salary attached to the highest rank held by an officer during his or her last year of service. Counselor, can I interrupt you and ask a couple questions? Sure. That section of the statute that is after the July 1, 1987 date, does that read, and I'm going to read two different versions of it, two different interpretations, and tell me if you believe this applies to either one. Does that section say that the salary attached to the rank held on the last day of service, or the salary attached to the rank held for one year prior to the last day? Or does it read the salary attached to the rank held on the last day of service or the rank held for one year prior to the last day. Leave the former, the salary attached to the rank held for one year. And I think you look at you have to have for one year is important language, which I think the appellees read out of the statute. Here, Lacoste, Officer Lacoste did not actually hold any rank for one year during his last year of service. He actually held two ranks, Sergeant and Deputy Chief. He held Sergeant for approximately three months and then he was Deputy Chief for approximately three months and then he was Sergeant. But I think in such a situation, the plain language and the most reasonable and sensible way to read that is what was the salary he actually received? Well, so under the statute, had he had they promoted him to Deputy Chief on his last day? He would have then received the pension for Deputy Chief. Yes, he would. It does allow for spiking of the salary for retirement purposes. You know, it's not necessarily relevant for our purposes here. That language is now progressively being eliminated, isn't it? Not from these this statute and similar statutes by the legislature. I did not look into that, but I think that's correct with the discussion of the tier two and the averaging that's under the tier two office. I did not look into that much detail, but I believe the court is correct on that. OK, I don't want to overstate my knowledge on that. It's OK. Go ahead. I'm sorry. So it stands now, Mr. McCoy. Is it your what is your understanding of what benefit? Under your approach, Mr. Lacoste, you see, or having been assistant chief of deputy chief for those three months. For those three months, we it's our understanding that we should look at the actual salary that he received for that whole year period. And because his salary was higher for the first three months of the year, that salary is going to be increased a little bit. And then for his benefits, which are half that salary is going to be increased a bit for, you know, approximately three months worth of increased pay. And that reflects, though, as well, the sort of the converse is, you know, during those three years, I mean, three months, the first three months he's paying in more to the pension fund. He's making larger contributions. But then when he got demoted, his contributions went down. And we think that's nothing unfair or inequitable to say that, you know, you pay in less, you end up with less. And that's, I'll admit, contradicted a bit by the idea that you can allow spiking if there's a, you know, increase in salary on the last day. But, you know, that's a conscious decision by a city or a police department that we're going to reward someone out the door or maybe we have some sort of settlement or severance agreement provisions. But that's a conscious decision. But here it actually reflects what he received and his contributions he actually made. So he gets a little bit higher than someone who was just sergeant the entire year because he has three months of higher salary. But he doesn't get the whole shebang of being treated as if he had been deputy chief the whole year. And I think if they wanted to treat him as deputy chief for the whole year, they could have easily written this statute to say you get the salary attached to the highest rank you held at any point during your last year of service. So if you go up and down, you just look at the highest salary during that year and that's your salary. But that's not what they said. And I know the police want to focus on the attached rank because they think, well, you know, they think that's significant. I don't think I don't quite understand why they think that's so significant because this gets ahead of myself. But into that Campbell case that Campbell X people X relations Campbell versus Swedenberg case, which talked about there was a single rank, admittedly, in that case. But someone's salary went up during the year and he didn't get the highest salary. That officer, he was a sergeant at the beginning or the end of it as a sergeant, but his salary changed during the year. And when they said what the salary is attached to rank, they averaged it. They said that was a common sense way to handle that situation where it changed during the year. So salary attached to rank is not necessarily static. So just to say you were looking at the salary attached rank doesn't get you the answer. We need to look at what's the salary attached to rank for one year. And I think the athletes would like to remove that for one year part of the equation. So I think Campbell really controls because, you know, the language is almost identical, except for that spiking provision, which everyone agrees doesn't apply here because he didn't get a promotion on his last day or his last month of service. So the language is almost identical in Campbell situation is a little bit different. Yes, because there's no demotion here. But when you look at what salary means, it's typically and this is, I think, plain language is what you receive. What is your paycheck? And I don't think there's anything fair about making pension decisions based on what your actual paycheck is, because, you know, your contributions vary based on what your paycheck is. Your calculations, does he get the longevity increase that he received in March? You know, I honestly don't know the answer. We put into the record what we thought. The before the pension board, and I think if the court was to rule in our favor, it would be remanded for to calculate the actual salary. And maybe we could argue about what that actual salary is. But we put into the record what a calculation of what we think the actual dollar amount is. And I don't have that document ahead of me. If, as you interpret it, that he should get the salary that he received. Yes. That not then include the longevity. Yes, it would. I think it should. Yes, I think it should. Go ahead. So, so. I really think this case is, you know, can be decided based on saying what is salary for one year and and not right reading the word for out of the statute. But, you know, then I, my fallback is you look at the Campbell case and it's so close that that. And not only that, that interprets. Not only should that inform this court's interpretation statute, but it gets to what did the legislature mean when they wrote the current version of the pension code. And that Campbell case comes from, you know, 1950s. It was in the mind of the legislature, presumably when they. Reuse the language and the current version of the pension code and then re-upped that statute several times. It's been amended, but that a salary attached to rank for one year has been in the statute for decades now. And that Campbell case since 1953, I think, was has been presumably the court supposed to presume that the legislature was aware of it when they rewrote the statute a few times, but kept the same language. How do you explain that that anomaly of the spiking under the appellees position, it would seem almost logical that well if you're allowed to give him the highest. If you can, if you can promote him the his last day of service and give him the highest pension possible, based on that new position. Why shouldn't that also apply if he serves for three months out of the year if you're going to be able to give it to him for one day, why not, or why not for the entire for the three months. I think the answer is that is a conscious decision by municipalities police departments to reward someone out the door here, and It allows to, you know, after a long term of service to give a bump to people's retirement. I'm not sure if I was writing the statute, but I didn't that I would have put it in there, the wisdom of that with you, the problems we have with the pension codes. The liability of the state of Illinois for all these pensions out there and the cost that imposes on taxpayers, but I think that's a conscious decision here the city made a decision to demote. Mr lacoste I think they had good reasons it's not really in the record about the reasons why he was motive for misconduct, but they did. And so if you can give someone a reward. If the motive. I think that should have consequences as well. And that's what we're seeing here. It doesn't have There's some protection to a officer in that I think that there may be concerned about, you know, officers being targeted for political reasons and then losing the pension. But here, if you average it It reflects what they actually received that is tempered that way. So if an officer is demoted and doesn't like it, they could retire and assuming that the retirement age, they can retire the next day. And that's not going to affect their pension because the what they received over the prior year is really not going to be changed. Anticipate Mr Mancini is going to say, well, with that averaging that means then you're rewriting statute. I don't think so. Because you could say averaging. You could say just use actual salary or just what salary means salary is what you receive but If I am guilty of rewriting it by using the word averaging. So is the public court in the Campbell decision, which is what they did. They averaged what the sergeant received Or they they are. In other words, they said, what did he actually received during that year month to month and they added it up and divide by 12 You know, you can say that. What do you receive or you can say averaging, but that's what the public court did. And that's what the Department of Insurance is suggested should be done. And there's decisions. We also cite There. I know that they're going to say there's was one email that said a different result. And then we asked for clarification and the Department of Insurance really quickly backed off and said, no, it always means You look at the 365 days pay the average of it. The prior day. So both the appellate court and the Department of Insurance have used averaging and not have always used the word average may not use that words, but I don't particularly like the word averaging as well. It just means what is what did you get over 12 months And you get to the same result, whether you use that word or not. I don't think you get to the same result, though, if you say, well, what was the highest rank held during the last year. This is the same. That's the same as held holding a rank for one year. And I think that's the real damage to the statutes, the mission of the word for and that which the appellees are urging Sorry if I took up your argument. No, no, I prefer. I prefer the give and take. I hate writing speeches. So I prefer this Yeah, and I really invite any other questions there. I mean, I think It just want to be clear that we do want to urge a plain language, but I think we have backup arguments about the Department of Insurance position, which is under the result Brazil case entitled to considerable deference and I think we also have the I'll be a very short statement to Senator Jones about that, who were he did use the word averaging on this for the Illinois Senate as to what was done to figure out set salary. And again, the case law. So I think if you say, well, this is not clear. And you may say it's not clear because we got two sides and they don't seem to agree what the statute means If you say it's ambiguous. I still think you get to the city's position based on the backup rules of construction or tool for construction of the statute. They're going to say, well, this has got to be liberally construed the statute, but I think the Campbell case is one of the few cases, but Not incorrectly decided that recognizes that there are other interests, just other than the officers interested Play when you construe a pension code. There's the municipalities interest and the interest of other employees, they have an interest of a solvent fund. And I don't think it's correct that the pension court fund to do whatever they want is they were kind of advised by their first counsel in this. This is supposed to be under A mathematical formula. It's not supposed to be a discretionary decision. Yeah, and it should not be a different result in Peoria County or Rock Island County as to what you know pension fund is doing in calculating salary, there should be a simple mathematical formula that should be applied across the state. Okay. Anything further. Mr McCoy. No, no. Thank you. All right. Thank you. Council. Mr Mancini. Good afternoon. May it please the court and counsel. The most troubling argument I heard out of Mr McCoy's mouth is that the municipality should somehow control The amount of salary awarded to a pensioner at the time of his retirement, whether that be by an increase with a raise or a promotion on the last day. Or a demotion on the last day and decreasing his pension benefit is exactly what the pension code seeks to avoid Municipalities and the pension board are separate entities and sometimes they do call fall into conflict. The reason for the structure of the pension code and the term salary and salary attached the rank is for consistency throughout the system so that there is control of the calculations. The pension board. Okay. Who has control of what rank an officer may hold The municipality. Okay. Go ahead. So I believe what in after Sweetberg was decided some 28 or 25 years later, an amendment was proposed to this section to address what happened in Sweetberg Sweetberg, they didn't allow the spike, for lack of a better term, the court said, and the pension board didn't allow the spike. There is just because the rate of pay for that rank changed. Absolutely. Okay, so what the legislature wasn't for that officer. It was, it was across the board. Yes. Okay, so that's that's dramatically different than the situation we've got here. Here we're talking about are changing rate of pay for a particular officer. At a particular stage in his career in Sweetberg. It's just an across the board rate increase that happened to apply to him just before he's getting ready to retire. Right. And under the amended statute. If Sweetberg left after July 1 in 1987 he would get that increased amount. The legislature made that clear. And in addition, they made it clear that you couldn't just unilaterally decrease that amount in the one year time before his retirement. That that he got both he got the highest possible salary at the time of his retirement in that one year timeframe. That's what that amendment was intended to prevent or address was that the fact that they didn't want to allow a spike, and they wanted to prevent the opposite from happening. The municipality. Wait, wait a minute, Council, that's not a spike. That was a rate increase across the board to all the officers. Yeah. Yeah, I don't mean spike. I'm just using the term spike because that's how we use it earlier in the argument. Okay, I'm not calling it a spike and I apologize. So, so the increased salary that an officer earns during the last year of his salary. Sorry, during the last year of employment should be the salary that's used that is pension. And that's consistent with disability claims. In addition to retirement. Because again we look to the administrative code in the pension code for the definition of salary. And that is a fixed and regular amount the courts have addressed this over the years, and they've instructed pension boards like my client. They have to be fixed and regular payment of salary, that's used to award benefits must be fixed and regular, and it must be appropriated by ordinance. Under Mr McCoy's interpretation. None of those things meet that standard, because you have a fluctuating salary, based on how long an officer serves for a particular time at a particular position during the last year of his retirement, well it's it's fixed and regular during the time that he's serving a sergeant is then fixed and regular during the time that he's serving as Deputy Chief, and it's fixed and regular during the time that he's serving as Sergeant again isn't it. But it's not fixed and regular at the time the pension benefits are awarded and that's what the courts are instructed us as attorneys for the pension board is that salary has to be fixed by the CBA or some other contractual provision attached to the rank of that officer held at the time of the benefit, whether it's disability or retirement. It has to be appropriated for specifically by ordinance. So, in this case, I can guarantee you the city did not appropriate a salary of some amalgamation of multiple salaries, based on the rank that the officer held during his last year. I can also guarantee you that he wasn't paid a fixed salary at that level, whatever that number is, I think the city contends it's $111,852 and eight cents by averaging. Yeah, that doesn't exist in the CBA, that doesn't exist in the ministry, the appropriation ordinance. So, as a pension board we have these defined parameters that we have to operate within. In addition to reading the statute. And what I what I want to draw this panel's attention to is the term whichever is greater. That lends to the intent of the legislature to award the greatest possible benefit to that officer during the last year of employment. It applies to both provisions in meeting, it's the salary on the last day of his employment or salary attached to rank for the last year. He was employed by the by the municipality, whichever is greater. So that's what the legislative intent here says salary attached to the rank held on the last day of service, or for one year prior to the last day, whichever is greater. Correct. She asked the same question to you. Does that mean the salary attached to the rank held on the last day of service, or the salary attached to the rank held for one year prior to the last day, or does it mean the salary attached to the rank held on the last day of service, or the rank held for one year prior to the last day. It would be the rank held for one year. That's how we interpret it because that's the only way you're going to get a either or one is greater than the other. If you, if you need to get the salary that you earned on your last day, or you get the highest salary, the rank you earned during that year, because remember he contributed at the higher rate for three months for whatever take the take the most extreme example your honor. Let's say, or 364 days right. He contributed by deputy chief salary for 364 days gets demoted the day before he retires. And now they want to pay him at the sergeant salary because that's the salary attached to rank. Nowhere does this code say we can average this, that that just doesn't exist in the pension code. It doesn't exist in the existing pension cases of an averaging of salaries. If you, if you interpret it as you, as you, if you interpret the section, as I read it here to you, the rank held for one year prior to the last day. He's held the rank of sergeant, he's held the rank of deputy chief and he's held the rank of sergeant. Why doesn't the term rank applied all of those. Well, it would but it's the greater one. That's what we're instructed to apply is the greater one which in that case was the deputy chief's salary for the rank, you said it's applied to the rank not salary. Well, I don't know how you can. I don't know how you can just distinguish between those two because salary attached to rank is a term of art. That's that they go hand in hand. The pension code never divides those up when it does with disability or retirement benefits, it looks at as a term of art salary attached to rank which is usually defined by the CBA, and or the Mississippi or the appropriation ordinance issued by the municipality. So, salary attached to rank. When we interpret it in the pension level is one thing, it can't be divided, you can't just have a rank. And a different salary related to that rank. So, so that's why I struggle with that, that either or option you gave you gave us a case, because I don't think that's how practically speaking the pension code intends to interpret the salary attached to rank definition. So the only other thing I wanted to point out to the panel is that the legislature in 2011 or 2010 created two tier employees and it created an average for tier two. And it, it has a definition it has all kinds of wonderful terms and how to do that. And it didn't change subsection a in any way, shape or form. So, to argue that the amendment in 2011 or effective 2011 doesn't prove that the legislature did not intend to average previously. It is contrary to the clear language of the stage. The statute now stands with an average for tier two and not an average for tier one. So all of Mr McCoy's arguments for an average and reading those terms into subsection a just fall by the wayside when you consider that subsection D was amended after that point. So, so I think is, is you look at this in an overall perspective, Swedenberg said you couldn't spite. Let's, let's call it back for purposes of this argument. What the legislature did is it changed the law to address that by saying you could offer the higher salary as a pension benefit at the time at the last day of service. And you can also protect that same potential officer from being demoted on the last day of service and then receiving a lesser pension. That's the intent. That's the intent that we've been applying and I think many pension boards have been applying. I just wanted to say I appreciate this for taking this case because this is a hotly contested issue within the pension world right now. And we look forward to a decision, we hope the decision is one where you affirm the finding of the pension board in this case and award the officer a pension based on a $116,348.62 salary. At the time of his retirement. Thank you counsel was bone steel. Thank you, your honors if it pleases the court first let me apologize very quickly I am on spring break and I could not get the background to work. If for some reason my internet keeps telling me it's unstable but if for some reason I go mute Vince feel free to step in and take the rest of my argument if that's the case, I'd rather not waste the court's time waiting for me. And you were doing a very fine job my dad. Your Honor, let me start with the Campbell's case if it pleases the court. As you look at the top of page 12 of the appellants brief. You'll notice that it says half of the salary attached the rank he held on the police force for one year immediately prior to the time of his self suspending performance of his duty or retirement. That is why or Campbell average, it didn't give him didn't work didn't give her a choice for two ranks. That is not the case in the current statute, which says the salary attached to the rank hell of the last day of service, or for one year prior to the last day, whichever is greater. In this instance, Your Honor. We believe, and the difficulty is. This particular statute overwent at least eight different amendments in the 80s alone, let alone the 70s and the 90s and the 2000s that I could count. It's a bit, it's a. It's very important to the police officers what kind of pension they get. They work, and they struggle. They put themselves in line of duty.  A physical job that requires a lot of danger, and they're collectively bargaining for the best that they can get for their pensions because of this. So we're talking about the salary attached the rank of the last day of service or for one year prior to the last day, whichever is greater. It would be my opinion, although the courts, obviously can construe the law without my opinion. It would be my opinion that they're collectively bargaining for something that is taken outside of the realm of politics. They're not bargaining for the guy who's good in with the brass. They're not bargaining for the. The good boy who's going to get the good reward. They're bargaining for themselves as a lineup getting promoted. And I think, you know, when I was arguing before, we're not concerned with the bargaining here we're concerned with the language of statute. My question is the argument you and Mr Mancini are raising. Aren't you literally removing from the statute. The term the last day. I don't believe that we're removing the term held on the last day of service. I think that, essentially, and I will I will tell you your honor, not to go on a tangent. But I argued before the trial court, the ambiguity of the statute and how it should be construed in my clients favor because I am less familiar than, for example, fences, with regards to these pension board statutes and how they're written. And Vince very articulate put the salary attached to the rank held is a term of art. So, he argued that before the trial court, then I believe he did a very persuasive job in his brief, explaining what that means, which is why I went into look in and what my and why my brief changed essentially from the trial court level, which is, we're not taking out the last day of service, but we're saying salary attached to the rank held applies to more than one. Time frame. Salary, essentially, make up on last day of service salary attached to the head to the rank held for one year prior to the last day, whichever is greater. It's not giving an average of salary. It's saying the salary attached to the rank held, whichever rank that may be in case of demotions. And I think Vince did a very good job. And on the last day of his service. He was not deputy chief. He was not deputy chief. That is true. But what I'm saying is that he should get a pension as deputy chief reach out last day of service doesn't matter. Well, I don't think that's true, Your Honor, and I think Vince actually did a very good job in his brief of giving you a good example where he wrote in what happens to the person who's who holds, you know, the rank of sergeant for six months, gets promoted to deputy for the other six months. Why would the legislature treat them differently? And so I'm saying that I think that I'm not cutting out the last day of service. I think that's an important part. I think that the city is right, although it pains me to say that, but I think the city is right that it allows someone, unfortunately, to get a bump and say that you know you don't have to hold it that whole time, you can be promoted that last day and still get the same benefits. It may not have been foreseen that someone would be a deputy chief and then be bumped down as occurred in this case to sergeant. But that's not the issue before us. The issue before us is what's the language of the statute. And I don't see how we can agree with you, Mr. Mancini, without reading out of the statute, the last day. Service on the last day. And that's a phrase that the legislature put in there, perhaps for the idea of giving someone a last minute bump. But it also applies to someone who was a deputy chief and then is knocked down to a sergeant, as the case of your client, who on the last day was no longer deputy chief. Why doesn't that begin and end this entire case? Well, it would, Your Honor, if the sentence stopped there. But it says, or for one year prior to the last day, whichever is greater. So it's giving the pension board the option, essentially, to apply whichever rank he held that was greater for the last year. The object of that sentence does not rank for the last day or less. So now we have to apply whichever is greater. The object of that sentence does not rank. As Justice DeIron pointed out, the object is, or the subject is salary. Well, so I think the salary attached to the rank held is a whole phrase. I don't think the salary is the object without taking in attached to the rank held. And then it gives you the, at least that's how I interpreted it. Now, this goes back to my second argument, Your Honor, which is that if I can interpret it in one way, and Justice Connect, the Honorable Justice Connect can interpret it in one way, and Vince Mancini can interpret it one way, and Robert McCoy can interpret it one way, then it goes to ambiguity. It's ambiguous. No, it doesn't. And it should be construed in that favor, in that situation. It's a great counsel. If that were the criteria for ambiguity, the appellate courts would be out of business. It's our job to determine what these statutes mean, and it's a funny thing about how lawyers are always able to find ambiguity. I will give you that, Your Honor. Lawyers are always able to find ambiguity, and you would know about statutory interpretation far more than I would, so I feel like you'd still find your footing somewhere, Your Honor. But in this case, I don't think you can take out salary. I just don't. How can you just separate salary from attached to the rank held, is my question. So when you're talking about, in that case, why not put the salary, comma, attached to the rank held on the last day of service, comma, or for one year prior to the last day? Because if you did that, that would say that the salary is, in fact, the object. But salary attached to the rank held is one phrase, without interruption, without periods, without parentheses, without commas. And even though I don't want to be seen as, to quote Mr. McCoy, quibbling over commas, especially when legislative writing is not my strong suit, I will say that without something indicating that attached to the rank held is a separate issue, attached to the rank held on the last day of service is a separate issue, how can you read the statute without seeing that maybe the salary attached to the rank held is what applies to the two different timeframes that follow after that? That's sort of where I see the statute leading, because I think, and again, to quote the brief, commas do matter. They do apply, they do separate things out, they give you an object versus a subject. They could have easily put that in there. They didn't. And then with that, taking that and taking Mr. Mantini's arguments, you know, salary attached to the rank held is used throughout the pension code to mean something in particular. And it's not just the salary and it's not just a number, it's a calculated number based on what the rank is, so that it takes out the ambiguity for the pension boards. So it takes out them trying to calculate to the penny, you know, what everyone received for the first three days versus the next six months versus the next six months or whatever. All right. Thank you, Council. Thank you, Your Honors. Mr. McCoy, you're on mute, Mr. McCoy. I should know better than that by now, but I've had enough Zoom meetings, but thank you, Your Honor. As to the issue that Mr. Mantini suggests about the salary being fixed, I think salary is fixed, even under the city's reading. The city has set salaries for sergeants, they set salaries for deputy chief. But what is fixed is the date of the retirement. You look at either the last day or the preceding year. And then at that time, you have a fixed amount of dollar amount that you can calculate just by dividing into what the salary is. And this is a salary interpretation that the Department of Insurance has given in all its advisory letters that we have cited here. But I think it's still the plain language reading. And I still go back to Campbell, different situations, some factors, but they did average or look at the actual salary received using the same basic language that's in the statute now, unless you're looking at the last day. We're not at the last day situation. We're looking at the fixed period of one year situation because, frankly, Mr. LaCoste doesn't want us to look at the last day because he knows he's had a lower salary on his last day. So we look at the one year situation. And during that time, he had a fixed salary of deputy chief for three months. And for nine months, he had a fixed salary as sergeant. And that number was unchangeable at the date of his retirement. We have a period of time where we know the number. Mr. Mancini gave a situation, though. What happens, though, that city demotes someone their last day of service. So we go from someone's been deputy chief all their last year of service, except for day 365, they go to the sergeant. Simple. They're going to get the deputy chief retirement benefits because you look at that one year period. That's we reflected what they actually received and they're protected. So I don't think the court needs to worry about that horrible that situation. It's not our situation, but I'm not clear that the legislature did decide what happens in the motion case. But they did talk about averaging with Senator Jones. They did not talk about giving this a police officer the highest possible when they adopted the current language in 1987. And I think that we have to look at the Campbell case in deciding what the legislature meant in 1987, rather than looking what they did in 2011. It's a settled principle of law that legislature presumed to know the decisions of the court in enacting something. So they could know in 1987 what the court had decided in 1953, but they could not know what they were going to do in 2011. And they did not choose to change the language that's been interpreted for many years as requiring averaging if you're not looking at the last day. So I think we get there with a plain language reading. But if we don't have the plain language reason rating of the statute. That's why we have the Department of Insurance charged with giving advisory opinions. So that so not every pension board is doing its own thing. And I don't think they have that kind of discretion. I don't think that discretion is vested in pension boards when they talk about the discretionary powers of pension boards. It's not to change mathematical formulas. What should be the same in every county or every municipality with a pension board throughout the state. So you have any questions I'd be happy to answer. I see none. The court will take this matter under advisement. The court stands in recess. Thank you.